**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEVELLE LEE ANDERSON, JR,

Defendant.

Criminal No. 25-408 (JRT/SGE)

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

Timothy Campbell Warner, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Eric L. Newmark, **NEWMARK LAW OFFICE**, 1600 Hopkins Crossroad, Minnetonka, MN 55305, for Defendant.

Defendant Levelle Lee Anderson, Junior ("Anderson") seeks to suppress physical evidence found after police pulled over and searched the U-Haul that he drove. Magistrate Judge Shannon G. Elkins issued a Report and Recommendation ("R&R") recommending that Anderson's motion be denied because there was reasonable suspicion to stop Anderson's vehicle to investigate for drug trafficking, the length of the stop was reasonable given the circumstances, and the dog sniff was reliable.

Because Anderson does not make new, specific objections to the R&R, the Court will review the Magistrate Judge's recommendation for clear error. Finding none, the Court will overrule Anderson's objections to the R&R and deny the motion to suppress evidence obtained during the stop.

## BACKGROUND

### I. FACTS

The Magistrate Judge explained the relevant facts of this case in the R&R; neither party objects to the facts as detailed in the R&R, so the Court will adopt it in full. (*See* R&R, Aug. 21, 2026, Docket No. 81.) The Court will include only the facts relevant to Anderson's objections.

#### A. Pre-Stop

Law enforcement officers identified Marysol Rodriguez-Lagarda as a potential methamphetamine supplier, secured a tracking warrant, and followed Rodriguez-Lagarda's movements using a tracking device as part of a larger drug investigation. (Tr. of Mot. Hr'g ("Tr.") at 11:10–12:1, Apr. 15, 2026, Docket No. 62.) On June 3, 2025, the tracking device showed Rodriguez-Lagarda traveling toward Willmar, Minnesota—outside of her usual movement pattern. (*Id.* at 12:13–13:2.) Drug task force investigators in the Willmar area began monitoring her movements. (*Id.* at 13:17–13:24.) Rodriguez-Lagarda drove in circles, behavior consistent with checking if any vehicles were following her, before she stopped at an auto repair shop. (*Id.* at 14:19–15:13.)

While Rodriguez-Lagarda was at the auto repair shop, officers observed a refrigerator truck arrive, drive to the corner of the auto repair shop's parking lot, and then leave after an unspecified time. (*Id.* at 17:13–21.) Later, a Dodge Ram pickup truck and a U-Haul arrived. (*Id.* at 17:24–25.) Officers observed Rodriguez-Lagarda's vehicle, the U-Haul driven by Anderson, and the Dodge Ram truck leave the shop at the same time, head

in the same direction, and travel together in what an officer described as a "convoy." (*Id.* at 18:5–21, 27:2–20, 64:5–8.)

A BCA Special Agent investigating the larger drug case asked local officers to stop the vehicles based on a traffic violation, if they witnessed any, and otherwise based on suspected drug trafficking. (*Id.* at 18:24–19:4, 23:15–25:9.) A local officer, Deputy Nick Moberg of the Kandiyohi County Sheriff's Office, observed three traffic violations: (1) the U-Haul weaved back and forth within its lane; (2) the U-Haul drove well below the speed limit despite a lack of challenging road conditions; and (3) the U-Haul tailgated Rodriguez-Lagarda's vehicle. (*Id.* at 35:3–17, 37:17–24, 38:18–39:25, 41:10–19.) Moberg pulled over the U-Haul. (*Id.* at 41:3–7.)

**B. Post-Stop**

After stopping the U-Haul, Moberg asked Anderson for his driver's license and a copy of the U-Haul's rental agreement. (*Id.* at 43:18–19.) Anderson provided a paper copy of his license but told the officer that he did not have the rental agreement. (*Id.* at 43:19–22.) Anderson also did not know the name of the person who rented the U-Haul. (*Id.* at 44:21–25.) In response to Moberg's questioning, Anderson indicated he was heading to Willmar, despite having just left the city; denied knowing where he was despite explaining that he was heading to visit his girlfriend in Willmar; could not recall where he had gotten the pallets of flowers he claimed to have recently picked up; and denied knowing the person driving the vehicle ahead of him despite traveling in a convoy. (*Id.* at

47:2–20, 48:2–22, 51:23–52:15). After observing Anderson's drooping eyelids, Moberg conducted a field sobriety test, which Anderson passed. (*Id.* at 50:12–51:13.)

When asked, Anderson told Moberg that he was not aware of any illegal substances in the U-Haul. (*Id.* at 53:5–11.) Anderson declined to consent to a search of the U-Haul. (*Id.* at 53:11–13.) Moberg then used a K-9, Loki, to do a dog sniff. (*Id.* at 53:13–14, 58:18–21.) At the time of the stop, Loki was certified by the United States Police Canine Association (USPCA) as a detector dog and the National Police Canine Association (NPCA) to detect several drugs, including methamphetamine, though he has since lost his certification to one of the organizations. (*Id*. at 30:8–31:20, 70:6–21.) Loki alerted to the U-Haul, where methamphetamine was later found. (*Id.* at 56:18–57:24, 62:21–63:06.) The stop lasted 23 minutes. (*Id.* at 8:10–11.)

## II. PROCEDURAL HISTORY

Anderson was charged with one count of conspiring to distribute methamphetamine and one count of possessing methamphetamine with intent to distribute. (Indictment, Oct. 22, 2025, Docket No. 1.) He moved to suppress the evidence obtained during the stop. (Mot. to Suppress Evidence, Jan. 13, 2026, Docket No. 37.) The United States responded. (Docket No. 42.) The Magistrate Judge held a hearing on the motion. (Tr. at 3:19–21.) After the hearing, Anderson submitted a memorandum in support of the motion. (Docket No. 72.) The United States responded (Docket No. 79), and Anderson replied (Docket No. 80.). The Magistrate Judge was able to consider these additional materials before issuing the R&R. (Docket No. 81.)

On August 21, 2026, the Magistrate Judge issued the R&R recommending that the motions to suppress be denied because the stop was supported by both probable cause from the traffic violations and reasonable suspicion of drug trafficking, the stop was not unlawfully prolonged, and the search was the product of a reliable K-9 dog sniff. (R&R at 13.) Anderson timely filed an objection to the R&R's reasoning and conclusions. (Def.'s Objs. to R&R, Sept. 3, 2026, Docket No. 82.) The United States responded. (Resp. to Def.'s R&R Objs., Sept. 18, 2026, Docket No. 83.)[1]

**DISCUSSION**

## I. STANDARD OF REVIEW

After a magistrate judge files a R&R, "[a] party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, Civ. No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and

[1] The United States filed its response fifteen days after Anderson filed his objection, after the fourteen-day deadline. *See* Fed. R. Civ. P. 72(b)(2) (allowing 14 days for a party to respond to objections); D. Minn. LR 72.2(b) (same). The Court's decision to adopt the R&R is not changed by the presence or absence of the response.

considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

Only specific objections to the R&R constitute "proper" objections entitled to de novo review. *Mayer*, 2008 WL 4527774, at *2. In his objection, Anderson merely repeated—at times verbatim—the arguments he made to the Magistrate Judge. Accordingly, the Court will review the Magistrate Judge's determinations in the R&R for clear error. *Montgomery*, 98 F. Supp. 3d at 1017.

## II. ANALYSIS

Anderson objects to the R&R and seeks to suppress evidence discovered in the U-Haul because, he argues, the Magistrate Judge erroneously concluded (1) that there was reasonable articulable suspicion to stop the U-Haul to investigate drug trafficking; (2) that the traffic stop was not unlawfully prolonged; and (3) that the K-9 used in the dog sniff was reliable. The Court will address each argument in turn.

### A. Legality of the Stop

Anderson first argues that any evidence obtained from the search of the U-Haul must be suppressed because Moberg did not have probable cause to stop him based on suspicion of drug trafficking. (Def.'s Objs. to R&R at 5–6.)

"A traffic stop is a seizure within the meaning of the Fourth Amendment and it is only constitutional if the stop was reasonable." *United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020). A stop is reasonable if it is supported by either probable cause or "an

articulable and reasonable suspicion" that a violation of law occurred. *Id.* (quoting *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)). Reasonable suspicion requires "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (quotation omitted). "[P]robable cause exists when the totality of the circumstances justifies the belief that a crime has been committed and the person being seized committed it." *Id.* Any traffic violation, however minor, creates probable cause to stop a vehicle. *United States v. Linnell*, 93 F.4th 1102, 1105–06 (8th Cir. 2024) (quotation omitted). Once an officer has probable cause to stop a vehicle, "the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Bell,* 86 F.3d 820, 822 (8th Cir. 1996).

The Magistrate Judge concluded that Moberg had two lawful bases for stopping Anderson: the traffic violations and investigating suspected drug trafficking. Anderson does not challenge that there was probable cause for a traffic stop, nor could he. The Magistrate Judge correctly concluded that there was probable cause for a traffic stop because Moberg testified to seeing Anderson weaving within his lane, driving under the speed limit, and tailgating. (R&R at 9; Tr. at 38:16–19, 41:10–19.) The traffic violations created probable cause to stop the U-Haul. *See Linnell*, 93 F.4th at 1105–06.

The Magistrate Judge also concluded that Moberg had reasonable suspicion to investigate drug trafficking because of the information conveyed to him by officers from

the drug task force. (R&R at 10.) Anderson argues that it was erroneous to conclude that Moberg had reasonable suspicion that Anderson was involved in drug trafficking because Anderson's name had not arisen during the earlier investigation and Anderson was not otherwise associated with Rodriguez-Lagarda before leaving the auto repair shop in Willmar at the same time and in the same direction. (Def.'s Objs. to R&R at 5–6.) Anderson asserts that "mere proximity to a suspicious vehicle is an improper basis" for developing reasonable suspicion. (*Id.* at 6.)

Anderson made these same arguments to the Magistrate Judge during and after the hearing. The Magistrate Judge correctly emphasized that "[t]he collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." (R&R at 10 (quoting *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008)).)

Anderson asserts that he was not tied to the drug investigation, but he overlooks that ongoing surveillance led officers to believe that Rodriguez-Lagarda supplied others with methamphetamine. He also fails to acknowledge that those officers saw Rodriguez-Lagarda engage in driving patterns consistent with conducting countersurveillance, and drive to an auto repair shop in Willmar—a city outside her normal travel patterns. Officers then saw the U-Haul go to the same parking lot in the auto repair shop where a

refrigerator truck had just been, leave the shop at the same time as Rodriguez-Lagarda, and drive together in a convoy. The prior drug investigation, behavior at the auto repair shop, and traveling convoy provided Moberg reasonable suspicion given the collective knowledge shared between officers. *United States v. Williams*, 429 F.3d 767, 771–72 (8th Cir. 2005). Accordingly, the Magistrate Judge did not clearly err in concluding that there was reasonable suspicion to stop Anderson and investigate suspected drug trafficking.

**B. Duration of the Stop**

Anderson next argues that because, in his view, the sole basis for the stop was a traffic violation, the expansion of the stop into a drug search was unjustified by Anderson's subsequent behavior. (Def.'s Objs. to R&R at 6–7.) The Court reiterates that the Magistrate Judge did not err in concluding that there was reasonable suspicion to investigate drug trafficking. Accordingly, the Court considers whether the Magistrate Judge erred in concluding the duration was reasonable given the stop's two purposes.

"Whether the duration of the stop is reasonable is determined by the seizure's 'mission,' and law enforcement must be 'reasonably diligent' in carrying out that mission." *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (quoting *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021)). "An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." *Magallon*, 984 F.3d at 1278 (quotation omitted). But "an investigative stop must cease once reasonable suspicion or probable cause dissipates." *United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993).

The Magistrate Judge concluded that Moberg's questioning and actions while investigating the traffic violations and suspected drug trafficking kept within the dual missions of the stop. (R&R at 11–12.) Over twenty-three minutes, Moberg asked standard traffic violation inquiries, checked for outstanding warrants, and conducted a sobriety check based on observations made during the stop. Moberg then investigated potential drug trafficking, in response to earlier information by officers and because Anderson's answers to prior questions during the stop heightened Moberg's suspicions. The Magistrate Judge's determination that the stop was of reasonable duration for the investigation was properly supported by facts and relevant law and, therefore, is not clearly erroneous.

**C. K-9 Reliability**

Anderson's last argument is that the K-9 used to conduct the dog sniff, Loki, was unreliable. Anderson asserts that the Court should consider evidence of reliability from after the search was conducted, namely Loki's later failure to be recertified by one of the two certifying organizations. (Def.'s Objs. to R&R at 9.)

Again, the Magistrate Judge had the opportunity to consider this argument and rejected it, concluding that Loki was certified reliable on the day of the search and that what happened after that day was "of no importance." (R&R at 13.) This decision and resulting conclusion were supported by the facts and not clearly erroneous.

## CONCLUSION

The Court finds that the Magistrate Judge's reasoning and conclusions in the R&R are factually and legally supported, and accordingly, finds that the R&R is not clearly erroneous. Thus, the Court will overrule Anderson's objections and adopt the R&R in full.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Objections to the Report and Recommendation (Docket No. [82]) are **OVERRULED**;
2. The Magistrate Judge's Report and Recommendation (Docket No. [81]) is **ADOPTED**; and
3. Defendant's Motion to Suppress Physical Evidence (Docket No. [37]) is **DENIED**.

DATED: October 19, 2026
at Minneapolis, Minnesota.

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge